McGhee Upholstery Company, Inc. v. Commissioner.
McGhee v. Commissioner
Docket No. 39898.
United States Tax Court
1953 Tax Ct. Memo LEXIS 2; 12 T.C.M. (CCH) 1455; T.C.M. (RIA) 54014; December 31, 1953
*2 Reasonable compensation determined. Loss on sale of stock was determined to be long-term capital loss. Ben L. Herman, Esq., 413 Wright Building, High Point, N.C., for the petitioner. George W. Calvert, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioner's income tax for the year 1946 in the amount of $5,441.97. The years 1947 and 1948 are also involved by reason of net loss carry-backs. The issues are the reasonableness of salaries paid to officers of petitioner and also the proper treatment of a loss sustained on the disposition of shares of stock. Findings of Fact The petitioner is a corporation organized on March 1, 1946, under the laws of the State of North Carolina. It filed its income tax returns for the taxable period March 1, 1946 to December 31, 1946, and for the calendar years 1947 and 1948 on the accrual basis with the collector of internal revenue for the district of North Carolina. The income tax returns filed by the petitioner for 1946, 1947 and 1948 disclose net income (or loss) as follows: Year
Net Income (or Loss)
1946
$43,918.91
1947
(19,558.18)
1948
( 8,156.52)
*3 The petitioner succeeded to the furniture manufacturing business formerly owned and operated by W. A. McGhee and Clyde Pendry as partners. In exchange for their partnership assets, W. A. McGhee and Clyde Pendry received capital stock in the petitioner, valued at $34,000 and $6,000, respectively. In each of the years 1946, 1947 and 1948, W. A. McGhee was president and treasurer of the petitioner. Estelle C. McGhee, wife of W. A. McGhee, was its vice-president. Clyde Pendry was the petitioner's secretary during the year 1946 and part of 1947. Sometime in 1947, W. A. McGhee purchased the stock interest of Clyde Pendry in the petitioner and Pendry left the petitioner's employ. In 1946, the petitioner had difficulty obtaining springs for the manufacture of furniture. W. A. McGhee, the petitioner's president, went to Baltimore, Maryland, to see Murray Rymland, president of the Comfort Springs Corporation in regard to the purchase of springs from that corporation. Petitioner bought 2,500 sets of sofa-bed springs from the Comfort Springs Corporation as a result of McGhee's trip to Baltimore. At the time of purchase, petitioner was required to purchase $5,000 worth of the Comfort *4 Springs Corporation stock in order to be able to purchase the springs. A check for $5,000 in payment for the stock was drawn on the petitioner by its president, W. A. McGhee. The aforesaid 2,500 sets of springs were invoiced to the petitioner at O.P.A. ceiling prices. The invoice was paid and was entered on the books of the petitioner as a cost of supplies or materials in 1946. The $5,000 representing the stock purchased in the Comfort Springs Corporation was set up in a separate account entitled "Securities" on the books of the petitioner. In 1947, about a year after its acquisition, the Comfort Springs stock was sold back to Rymland for $750 and the stock certificate was surrendered. The loss of $4,250 was transferred from the "Securities" account on the petitioner's books to the cost of springs and was deducted as a cost of operating in 1947 on its income tax returns. At the time of the hearing, the Comfort Springs Corporation was still in operation. W. A. McGhee, the petitioner's president and treasurer, devoted his full time and energy to the operation of the business in each of the years 1946, 1947 and 1948. He was paid $13,200 salary for the 10 months that the petitioner *5 was in existence in 1946. He was paid salaries of $17,700 and $10,850 for the years 1947 and 1948, respectively. These amounts were deducted on the petitioner's income tax returns for the respective years. Estelle C. McGhee, wife of W. A. McGhee, performed services for the petitioner in each of the years 1946, 1947 and 1948, for which she was paid $2,550, $5,800.32 [1] and $2,333.52, respectively. These amounts were deducted on the petitioner's income tax returns for the respective years. Mrs. McGhee had no specific hours of duty but was subject to call. She stayed at the plant and was in charge when her husband was away on trips. She helped in buying covering material for the furniture and other supplies. When the petitioner hired a new seamstress, Mrs. McGhee taught her how to sew. If an order for furniture came in on Friday after the other employees had left the office, Mrs. McGhee would take it home with her and prepare the necessary tickets and other papers so that work could be started on the order on Monday. The following *6 ultimate facts are found: A reasonable salary for W. A. McGhee's services to the petitioner in 1947 is $15,840. A reasonable salary for the services of Estelle C. McGhee to the petitioner for the years 1946, 1947 and 1948 is $2,550, $3,000 and $2,333.52, respectively. The $4,250 loss sustained by the petitioner on the sale of the Comfort Springs Corporation stock in 1947 was a long-term capital loss for 1947. Opinion ARUNDELL, Judge: This case was heard at Greensboro, North Carolina, on September 23, 1953. At the conclusion of the trial the Court's opinion was handed down. It was held that reasonable salaries for W. A. McGhee and Estelle C. McGhee during the years in question were as set forth in our findings of fact and that these salaries constitute allowable deductions in the respective years. Petitioner in 1946 was in urgent need of springs for use in the manufacture of furniture. Petitioner's president learned that the Comfort Springs Corporation of Baltimore, Maryland, had on hand the type springs needed, but they would not be sold at O.P.A. ceiling price unless the purchaser would first acquire stock in the Comfort Springs Corporation. Petitioner thereupon purchased *7 for $5,000 shares of stock in the latter company. Shortly thereafter the springs were delivered and billed at O.P.A. prices. The cost of the springs was entered on petitioner's books as a part of its inventory and the shares of stock were carried on the books of the company in an account entitled "Securities". The next year, in 1947, the shares of stock were resold to the Comfort Springs Corporation for $750. The difference between the cost price and the sale price was $4,250 which was thereupon charged by petitioner to cost of goods and not as a loss on the sale of shares of stock. The Comfort Springs Corporation was and continued up to the time of trial as a going concern. The record is entirely too meager on which to conclude that the transaction that petitioner had with the Comfort Springs Corporation was other than what it purported to be, the purchase and sale of shares of stock, and the loss that was suffered by petitioner must be treated as a long-term capital loss. Cf. Western Wine and Liquor Co., 18 T.C. 1090. Even if it had been concluded that the purchase of the shares was to be treated as a part of the cost of goods, it was a purchase in 1946 and not in *8 1947, and any attempt to treat the loss either as cost of goods purchased in 1947 or an operating loss in that year would be clearly wrong. Decision will be entered under Rule 50. Footnotes
1. This is the figure appearing in the notice of deficiency, but the tax return indicates that the amount paid Estelle C. McGhee was $6,400.32.↩